**KATZ v OHIO NATIONAL BANK, Exr, etc**

Ohio Appeals, 2nd Dist, Franklin Co

No 2277. Decided April 21, 1933

Wilson & Rector, Columbus, for plaintiff in error.

Hedges, Hoover & Tingley, Columbus, and Charles Krumm, Columbus, for defendant in error.

## BY THE COURT

From such judgment of the trial court error is prosecuted to this court.

The testimony taken before the trial court is contained in the bill of exceptions filed in this court. There is little dispute as to the facts.

The pertinent facts as disclosed by the bill of exceptions may be briefly stated as follows:

Leo Katz, the husband of the plaintiff in error, Stella M. Katz, was a prominent business man of Columbus, Ohio. In June of 1924 he made an application to the Huntington National Bank of Columbus for a loan of $50,000.00. The Huntington National Bank agreed to make this loan to Mr. Katz provided he executed a mortgage on a certain 99 year leasehold held by him on certain property on North High St., Columbus, Ohio, and also took out two policies of life insurance on his life with the Midland Mutual Life Insurance Company in the aggregate sum of $50,000.00, and assigned same to the bank as collateral security.

The mortgage on the leasehold was executed by Mr. Katz and his wife, the plaintiff in error herein, and the policies of life insurance were secured on June 27, 1924. On that date Mr. and Mrs. Katz executed a series of notes to the Huntington National Bank aggregating $50,000.00 and on the same day delivered the mortgage on the leasehold estate on the North High Street, Columbus, Ohio, property and also executed and delivered to the said bank assignments of the said life insurance policies.

Mrs. Katz was named as beneficiary in these policies of life insurance.

The assignments of the life insurance policies made concurrently with the securing of the loan from the bank were executed by both Mr. and Mrs. Katz and they thereby assigned and transferred unto the Huntington National Bank of Columbus all of their right, title and interest in said policies of life insurance upon the life of Mr. Katz and the insurance company was authorized by such transfer upon the maturity of the policies to deduct from the proceeds thereof the amount of the indebtedness thereby secured and pay the same to the said Huntington National Bank; the balance of said policy, if any remained, to be payable as designated therein.

Both of these policies of life insurance contained a provision that the beneficiary should not have by reason of the provisions of the policies any vested interest thereunder and that the insured might, before maturity change the beneficiary in the policies. These policies were kept in full force during the life time of Mr. Katz and no change of beneficiary was made therein. Mr. Katz died in October of 1927 and when he died there had been no change, as above stated, made in the beneficiary designated in either of said policies and the assignments of the policies above referred to made by Mr. and Mrs. Katz to the said Bank were in full force and effect.

The record discloses that at the time of the death of Mr. Katz he was indebted to the Huntington National Bank upon the notes signed by himself and wife in the sum of between $35,000.00 and $36,000.00.

These policies were paid by the insurance company in November of 1927. They were paid at a meeting at which a representative of the insurance company; a representative of the Huntington National Bank; Mr. Jones, an officer of the Ohio National Bank, the executor of the last will and testament of Mr. Katz and Mrs. Katz were present. The check issued by the insurance company in payment of these policies was made payable to the order of Mrs. Katz. She immediately endorsed the check and turned the same over to the assignee of the policies, namely, the Huntington National Bank which bank deducted the amount then due it on the same notes and turned over to Mrs. Katz the difference bteween the amount of said indebtedness and the value of the life insurance policies.

At this same meeting the Huntington National Bank released the policies from the assignment and retransferred all their rights under the policies to Mrs. Katz and also executed an assignment of the mortgage which it held on the 99 year leasehold estate on the North High Street property and the notes which had been paid by the insurance money to Mrs. Katz without recourse.

Mrs. Katz subsequently filed her claim with the executor of the last will and testament of her husband, namely, the Ohio National Bank, for allowance in the amount so paid to the Huntington National Bank out of such insurance money. This claim was allowed. In October of 1930 she also at the request of the executor released the assignment to her of the mortgage on the leasehold estate on the North High Street property without prejudice to her rights against the estate. In January of 1931 the defendant in error, the executor, disallowed the claim and this litigation is the result of such disallowance.

In brief plaintiff in error claims that she was a surety on the notes in question and that she is therefore subrogated to all the rights of the bank.

Counsel upon both sides ably presented this case in oral argument and have supplemented the oral argument with unusually exhaustive briefs.

The briefs contain a discussion of the pertinent facts and citation of many authorities from the courts of this and sister states and also decisions of the United States Courts.

We have examined these authorities with care, but shall not attempt to discuss the same in detail. We shall content ourselves with merely announcing the conclusions at which we have arrived after a consideration of such authorities and the evidence.

These two policies of life insurance were taken out primarily for the benefit of the bank as security for a loan it was about to make to Mr. Katz, and one of the conditions of making the loan was that· these policies should be secured.

It is apparent to us that without the desire of Mr. Katz to secure the loan the insurance would not have been taken out and doubtless the loan of the bank to Mr. Katz would not have been made without the insurance policies. Had Mrs. Katz refused to join in the assignment of. these policies Mr. Katz had the right to change the beneficiary as the policies so expressly provided. The beneficiary interest of Mrs. Katz could only vest upon the death of her husband and as she had previously made an assignment of all of her interest in the policies her vested interest could only relate to the surplus remaining after the payment of the notes given to the Huntington National Bank and which notes were secured by the assignment of the said policies.

Without attempting to discuss the law in other jurisdictions, we can not escape the conclusion but that the rule as announced by our Supreme Court in the case of **Oettinger v Sparks, 109 Oh St, 94,** is decisive of ˙this case.

Counsel for plaintiff in error attempt to distinguish the case in the **109th Oh St** from the case at bar. There are some elements of distinction between the two cases it is true, but upon a careful study of this case we think the reasoning of our Supreme Court in the Oettinger case is decisive of the matter here presented for consideration. Some reflection has been made upon the conduct of the executor in regard to certain advice it gave Mrs. Katz; upon its original allowance of this claim and its subsequent rejection of the claim after Mrs. Katz had released her mortgage interest on the leasehold property on North High Street. Such criticism may not be unwarranted in part but we do not think that Mrs. Katz thereby changed her legal status as to the funds arising from the insurance policies. If this be true then such acts can have no legal effect upon the determination of this case.

Judge Robinson in rendering the decision of the Supreme Court in the Oettinger case says:

"The right of Richard P. Sparks as beneficiary of this insurance contract, at the time he joined with the decedent in assigning the benefits to the superintendent of the relief department, was a mere expectancy, which might have been defeated at any time by the decedent ceasing to comply with the terms of the contract, by her designation of another next of kin within the degree of first cousin, or by assignment to the superintendent of the relief department, and, while Richard P. Sparks might have withheld his consent to the assignment of benefits to the superintendent of the relief department, he could not have prevented decedent from accomplishing the transfer by the simple process of herself designating the superintendent of the relief department as her beneficiary to the extent of her indebtedness. He, therefore, by this assignment parted with nothing that he had dominion over or any right which he could retain against her will. The assignment of a mere hope or expectancy that decedent would keep˝ the policy in force and in his favor was not the assignment of any right or thing vested in him, and furnished no consideration for the agreement of the decedent that he be subrogated to the rights of the Improvement Company under the mortgage."

We are of opinion that the reasoning of our Supreme Court in the above mentioned case is decisive of the issues in the case at bar.

The judgment of the lower court will therefore be affirmed.

HORNBECK, PJ, and KUNKLE, J,. concur. BARNES, J, dissents.

BARNES, J, dissenting:

It is with regret that I find myself unable to agree with my associates in the determination of this cause.

Very briefly, I shall set forth the principles which I think should be determinative.

In June, 1924, Leo Katz negotiated with the Huntington National Bank for a loan of $50,000.00. As security of repayment of said loan when due he gave the following securities:

A first mortgage on a 99 year lease of a High Street business property.

Two insurance policies on the life of Leo Katz in the Midland Mutual Life Insurance Company in the sum of $25,000.00 each.

The personal endorsement of Stella M. Katz, plaintiff in this case.

The mortgage was signed by husband and wife and the 99 year lease had a value of many times the amount of the loan.

The insurance policies were probably taken out at the instance of the Huntington National Bank as an additional security. Mrs. Stella M. Katz, wife of Leo Katz, was made beneficiary in each of the policies. The policies contained the provision that the beneficiary might be changed at any time without the consent of the beneficiary then named. Assignments of the policies were made to the Huntington National Bank on the regular blanks furnished by the Insurance Company and headed in large type "ASSIGNMENT AS COLLATERAL SECURITY."

The beneficiary was not changed during the lifetime of Leo Katz.

There was an issue between the parties as to whether or not Stella M. Katz was principal or surety on the notes. The court below accepted the finding of the jury that she was a surety. This court is in accord in arriving at the same conclusion. Leo Katz died in November, 1927. Previous to his death he had reduced his loan by practically $15,000.00. Thereafter the Huntington National Bank duly executed a discharge of the assignment of the insurance policies and delivered same to Mrs. Katz, the plaintiff herein. At the same time the insurance company issued its check to Mrs. Stella M. Katz, the beneficiary under the two policies in the sum of $50,000.00. Mrs. Katz then paid off the balance due on her husband's notes upon which she was security and took from the bank an assignment of all the other securities that it held. At that time or later Mrs. Katz presented her claim to the executor of her deceased husband's estate and the same was allowed. Subsequent thereto the executor had the opportunity and desired to sell the 99 year lease whereupon the executor gave to Mrs. Katz an executed writing in a further effort to establish her claim against the estate of her deceased husband in consideration of her releasing the mortgage assigned to her by the bank. Thereafter the executor rejected the claim of Mrs. Katz and then followed the action.

Under the above stated facts, it is my conclusion that Mrs. Katz was subrogated to the rights of the Huntington National Bank and therefore she should succeed in this action. There will be and can be no merited dispute on the facts of this case. My associates have arrived at the conclusion that the right of subrogation would not inure to Mrs. Katz because in their opinion it was not her money that paid off the notes at the Huntington National Bank. If I understand correctly this is based on the theory that the insurance policies contained the provision that the beneficiary might be changed at any time and that no vested interest inured to Mrs. Katz; that an assignment having been made to the bank there could be no vesting in Mrs. Katz even after the death of Mr. Katz, only as to the surplus over and above the amount necessary to pay the notes. I have no difficulty in agreeing with my associates on many of the propositions, however, we do differ on the final conclusion. It is unquestionably true as a matter of law that Mr. Katz during his lifetime had the right to change the beneficiary without the consent of Mrs. Katz. However, the fact remains that he did not change his beneficiary.

Likewise there can be no question that the Huntington National Bank had a superior right to this fund over Mrs. Katz. However they did not assert it, but on the other hand consented that the payment might be made to her. I am in thorough accord with counsel for defendant in error as is stated on page 10 of their brief that where a creditor holds two or more securities for his debts he may proceed against either or both at his election and cannot be compelled to subject one before resorting to the other; such creditor has right to enforce either one or two securities as may be most to his advantage. 31 Cyc., page 363; 21 R.C.L., 685.

Applying this principle the Huntington National Bank had a right to do with their securities as they saw fit. There never was a time that they might not have given up the collateral security furnished by these insurance policies and relied on their other securities. They could even have gone further and cancelled all their securities, if they cared to, and relied upon Mr. Katz's

name alone. The fact that Mr. Katz died did not take away from the Huntington National Bank the privilege of discharging the assignment to them of the insurance policies. In other words, it was a situation in which the Huntington National Bank alone had the right to determine whether it would hold or discharge any of its collateral. Surely the executor of the estate has no right to complain. The result accomplished is exactly what Mr. Katz desired and all the interested parties including the executor sought to bring about. Mr. Katz had the right to make the insurance policies payable to his estate but he did not do so. He had a right to change his beneficiary but he did not do so. Even if the statements are accepted that the policies were taken out because of the demand of the Huntington National Bank, nevertheless Mr. Katz when he did take them out made his wife the beneficiary and never changed that provision. After his death without change of beneficiary the interest would vest in Mrs. Katz subject to the prior lien of the Huntington National Bank. When the Huntington National Bank yielded its lien the entire interest was vested in Mrs. Katz. In the majority opinion my associates hold that the case of **Oettinger v Sparks, 109 Oh St, 94,** is controlling. In my judgment the two cases are readily distinguishable. In the instant case the right of subrogation inures to Mrs. Katz by reason of the fact that she was surety on a note and paid the same as such surety. In the Oettinger-Sparks case, supra, there were no notes or surety involved. The only similarity ·in the two cases was that Richard P. Sparks was named as beneficiary and there was· a provision in the policy, the right to change the beneficiary without his consent. In the Supreme Court case the insured, Agnes Anderson, a niece of the beneficiary, Richard P. Sparks negotiated a loan and put up the insurance policy as collateral security. At the time the insured procured the loan she designated the Superintendent of the Relief Department as her beneficiary to the extent of the sum which might remain unpaid at the time of her death upon the loan. At the same time the loan was negotiated she entered into a contract with her uncle, Sparks, the prior beneficiary, that he should be subrogated to all the rights of the loan company in the event of her death and that the insurance fund should be used to pay off the indebtedness. Under this situation, of course, there would be no subrogation. Subrogation only arises by virtue of con-

tract and the only contract upon which Sparks could seek reliance was a contract made when the insurance policy was taken out and the loan procured. Of course, at that time, he would have no vested interest and so such a contract would be without any consideration. In the instant case the contractural relation between Mr. and Mrs. Katz was that of principal and surety and thereby there was a consideration to support the right of subrogation.

In the brief of counsel for defendant in error, the case of Walker v Pennick, 122 Virginia, page 664 is cited. There is no difficulty whatever in distinguishing this case from the instant case. In the Virginia case the positive terms of the policy made provision as to payment of premiums, etc. In that case the beneficiary was paid an amount less deductions for notes given for past premiums, the same being secured by the policy. The beneficiary sought to recover from the estate the amount of these deductions. The mere statement of this proposition should be sufficient to disclose why he did not prevail.

The case of **Schuremann, Executor v Twachtman, 24 C. C. (N.S.), 459,** while not parallel in all its facts contains statements with many principles applicable to the present case.

It is my conclusion that the merits of the controversy are with Mrs. Katz. The judgment of the court below should be reversed.